The Chancellor.
-'Qn the 16th March, 1840, Henry B. , Stoll and Edward S. Bell entered into partnership as merchants in Stanhope, under the .partnership name of Stoll & Bell; each burnishing an equal amount of capital. They purchased a stock of goods on the same day, from Andrew A. Smalley, for "the purposes of their partnership, .amounting to $3750; for which they gave Smalley their notes, in different sums, payable at different periods.
On the 11th March, 1841, the partnership was dissolved, by •mutual consent,- by agreement in writing and under seal. By this agreement Stoll took the stock of goods and merchandise then on hand belonging to the partnership, and all the books of account, ..notes, bonds, monies and effects of the partnership, -and all debts due the partnership; Bell relinquishing all claim "thereto; and Stoll agreed to pay all the debts of the partnership, and to relieve Bell therefrom, and to pay Bell the balance .due "him of the .capital invested by him, and the further sum •of $1600, for his share of the stock and profits of the partnership. -.One of the notes from Stoll and Bell to Smalley passed .into the hands of Coursen-& Woodruff, of New York: it was ■for $583 91. On the 23d May, 1843, Coursen & Woodruff "recovered judgment on this note against Stoll & Bell, in the •circuit .court of Sussex, for $607 91 damages and $36 41 .costs; and thereupon issued.execution, returnable to the term of August, 1843, of that court; which was put into the hands of the sheriff on the 26th May, 1843. By virtue of this writ the sheriff levied on the persona] and real estate of both Stoll Bell. The property of Stoll levied .on consisted of store *479 goods, household furniture, a pair of horses, &c., add also a house and lot in which Stoll lived.
The under sheriff says this levy was made about the 1 st of June, 1843; and that after ho had received the execution, he called on Bell, and Bell told him it was a debt of the firm, and to be paid by Stoll; that he then called on Stoll and informed him of the execution, and asked him if it was his debt to pay, and lie said it was; that in consequence-of this he took a more full and particular levy of the property of Stoll than of that of SMI In the latter part of August, 1843, the deputy sherifi' advertised the said estate of both the defendants in the said execution, by handbills. The under sheriff further says that, before the time arrived for advertising in the papers, he received notice that the judgment had been assigned to John H. Hall. He thinks Hall showed him the assignment; and his impression is that it was in consequence of directions from Hall that he did not put advertisements in the papers. He believes he had a written stay from Hall. He says he was called on several times by Bell and urged by him to proceed with the execution ; that ho uniformly told Bell he was under the direction of Hall in relation to the matter, and could not go on without his instructions.
The judgment was assigned by Goursen &. Woodruff to Hall in September, 1843; the assignment bears date September 20th, 1843 ; the receipt of E. W. Whelpley, the attorney of Coarsen & Woodruff) is dated September 25th, 1-843; it is for John H. Hall’s note for $548 22, at six months, endorsed by John Bell, on account of assignment of Goursen & Woodruff’s judgment against Stoll & Bell.
Goursen says the assignment was made to Hall at the urgent request of Stoll. It seems to have been executed on the 20tli, and sent out by Goursen & Woodruff to their attorney.
The answer says, that on or about September 1st, 1843, Stoll. - paid $125 to Courses <fc Woodruff on their execution.
Hall admits that the Goursen & Woodruff judgment against Stoll & Bell was for their joint debt, and that it was so understood by him at the time he became the owner of it. He admits he stayed the execution till his further order; and says that, at the time of the assignment to him of the judgment of Goursen *480 &. Woodruff he had-no knowledge or intimation of any agreement or understanding between Stoll & Bell that Stoll was to pay the debts'of the-firm, as alleged in the'bill; that he has never seen any such agreement or understanding, and had no knowledge of any till some time after the assignment and stay of execution,-when it was alleged by Bell that Stoll was bound to pay all the debts of the firm. He admits that Robert P. Stoll, about the 1st October, 1843', called on him and stated to him that Bell wished the money due on the Coursen & Woodruff execution to be raised out of the property of Stoll only, or words to that effect; but says that Robert did not represent himself as the agent of Bell, or that he' came at his-request.
About the 20th November, 1843, H. B. Stoll agreed to sell to Smalley the stock of goods he then had, at $1300; and three notes were drawn for the consideration money; but before the notes were delivered,- Smalley- told Stoll he wanted to be satisfied that there was no incumbrance on-t-he goods. Smalley testifies that Stoll told him there was no incumbrance on the goods, and wished him to give him the notes. That soon after this, he, Smalley, ascertained that a judgment had been obtained by Coursen &• Woodruff against Stoll & Bell, and that execution had been issued thereon, and levied on Stoll’s store-goods ; and that the judgment had been assigned to Hall.
On the 25th November, 1843, Hall, by writing under seal, released-to-Smalley all his-right to the goods under and by virtue of the said execution. Smalley says that, in the course of the negotiation- between him and Stoll, Stoll told him that Hall was to have the notes or a part of them ; that Stoll married a-daughter of Hall, and his wife is living.
On the 24th- November, 1843, Stoll conveyed to Hall his real estate. It was subject to mortgages. On the 2d December, 1843, Hall gave-his note to Andrew Shiner for $711, at fifteen-months, with interest, for a debt of Stoll’s. On the same day, Stoll gave his note to Hall for $711, at fifteen months,with-interest, slating in the body of it, that it was for value received by the note of Hall that day. given to the order of A;Shiner, for his, Stoll’s, debt. Hall gave his receipt, of the date of- December 13th, 1843,- acknowledging the receipt from Stoll of two- notes- of- Smalley, dated November 20th, 1843, for- $433 33 *481 each, payable, ouc iu twelve and the other in twenty-four months from date, stating that, out of the proceeds, when cob looted, he is to deduct the amount that may then be due on Stoll’s note to him of 2d December, 1843, for $711, at fifteen months, witli interest, and pay Stoll the balance. On the face of this receipt is written, “ Settled by the note of $711, and endorsing $88 1(3 on note of 20th June, 184.4,” being a note of this date for $250, on demand, with interest, given by Stoll to Hall.
On the face of the note from Stoll to Hall of December 2d, 1843, for $711, is written, “Paid 20th November, 1844, passing two of the Smalley notes to Coursen & Co. and taking up my note for which this was given.”
It seems- that the note for $711,- given by Hall to Shiner, was to satisfy a ca. sa. which Shiner, as sheriff, had against ill B. Stoll and R. P. Stoll, in favor of Coursen & Co., on which II. B. Stoll had been arrested.
The foregoing facts seem to bo undisputed. It is further alleged, in the bill, that Hall had notice of the terms of the agreement, of dissolution before he received the assignment of the judgment of Coursen & Woodruff'.'
Hall’s answer to this charge is not so clear and satisfactory as it might have been ; and there is some very persuasive evidence that he might- have had such notice before he received the assignment; but I do not think' it necessary to determine how this is. There can be no doubt from Hall’s answer and the proofs in the case, that before he released to Smalley Iris right to the goods by virtue of the execution, he knew that Stoll, by the agreement of dissolution, was to pay the debts of the firm of Stoll & Bell; and there is evidence quite satisfactory to my mind that lie had been urged by Bell, to proceed to a sale on the execution.
If Hall, before he received the assignment of the judgment and execution, knew that Stoll was to pay the debts of the firm, then the acts of Hah which followed the assignment are, it seems to me, very strong to show a design in Hall, in taking the assignment, to aid Stoll in withdrawing his property that' had been levied on from the lien of the execution and compel! • ing the sheriff to make the debt, out of- the property of JMk *482 The resort to such a measure, and the urgency of Stóll to have the judgment assigned to Hall, - show that, in all probability,-if * Goursen & Woodruff had retained the judgment and execution,they would have made the debt out of Stoll’s property; and this probability is greatly strengthened by the testimony of undei'sheriff M’Carter. Stoll’ had" told him it was his debt to pay, ■ and he had, in consequence thereof, taken a fuller and more" particulár levy on the property of Stoll than on that of Bell;: and had levied on property of Stolh amply sufficient to pay the" whole debt.
I am very much inclined to think, that-if Stoll could have' influenced Goursen & Woodruff to take the'same course that1 Hall took after he received the- assignment,- i. e. relieve his-goods and drive the sheriff on the property of Bell, no assign-' ment would have been urged or made.
If 1 thought the case required me to go so far, in order to re-' lieve the complainant, I should find it very difficult to avoid the" conclusion that, at least as early as when he gave his note to’ Mr. Whelpley, the attorney of Courseir & Woodruff, for the' assignment, Hall was sufficiently apprised of the- terms of the' dissolution, and of the object-of Stoll’s agency and urgency in having the assignment made. If he was, then he lent himself to aid Stoll in the design of relieving his property from an execution debt which, as between him and Bell, he was bound to • pay, and of throwing the debt upon Bell. This would not be' countenanced in equity. But, as I have said before, I do not think it necessary to go so far; It is clear that-before Hall-gave the release to Smalley he knew that by the terms of the disso-' lution Stoll was to pay this debt; and on being asked to’give the release he' could not fail, with his knowledge of the course things had taken, to perceive that he was asked to do a positive act which would give effect to all the preceding steps in the ti'ansaction, and to perceive what must have been Stoll’s design’ from the beginning. His giving the release,-under such ciñen instances, must be considered as an adoption,, with full know-i'edge, of Stoll’s aim and object, and a positive agency in accomplishing them. If Hall had, before, but indistinct glimmerings of the design, not amounting to knowledge or information,, it was now fully revealed to him ; - and if he1 might have ve» *483 - mained passive, and permitted the sheriff to - take Ms own . course on the execution, and make the money where he pleased ; or, if the sheriff threatened to sell Bell’s property first, might have stood still and left Bell to his application to this court,’I cannot think he was at liberty to do a positive act injurious to Bell, by releasing-the goods and thereby rendering it impossible either for the Sheriff to sell them to raise, the debt, or ■for Bell to take any measures to that-end.
It appears to me that a regard for the doctrines of this court, , and a purpose to give them their due influence and control over the transactions of men, require me to say that Hall should not -have"released the goods without stipulating for the payment of his judgment and execution out of the proceeds of the sale toSmalley.
I do not think it necessary to order a reference- to ascertain how much, in amount, of Stoll’s goods that were levied on remained in the store, at -the time of the sale of the stock to Smalley. It would be a -very difficult inquiry, and it is not 'likely that.any more satisfactory evidence could be produced on this part of the subject than is now before the court; and lam inclined to-think from.the testimony that the sheriff-could have , made, from his levy on the goods of Stoll, enough to pay the balance due on the execution.
Again, it appears to me that the release, with the full knowledge Hall had at the time it was made, was such an adoption ,of all the preceding acts tending, to the.sameend, that he should ,be held, responsible for the effects of the stay of execution, even ,if it be doubtful whether he had sufficient knowledge before the .stay to charge him with its effects.
I am of opinion that Bell and his property are.relieved from .the judgment.
Decree accordingly.